UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SWAMIJEE KAKARLA,

                Plaintiff,

           v.

SAMEER PENAKALAPATI, AVANI
TECHNOLOGY SOLUTIONS, INC.,
CEIPAL CORP., AVANI BUSINESS
PARK, LLC, and INDOTRONIX
INTERNATIONAL CORP.,

                Defendants.

**DECISION AND ORDER**

6:18-CV-06555 EAW

---

## <u>INTRODUCTION</u>

Plaintiff Swamijee Kakarla ("Plaintiff") asserts claims of breach of contract, fraud, discrimination, and retaliation against defendants Sameer Penakalapati ("Penakalapati"), Avani Technology Solutions, Inc. ("Avani"), Ceipal Corp. ("Ceipal"), Avani Business Park, LLC ("ABP"), and Indotronix International Corp. ("Indotronix") (collectively "Defendants").  (Dkt. 1).  Plaintiff further seeks a declaratory judgment related to his claimed ownership interest in the corporate defendants.  (*Id*.).  Defendants seek summary judgment on all of Plaintiff's claims against them.[1]  (Dkt. 65).  For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part.

---

[1]    Defendants have also asserted counterclaims against Plaintiff.  (*See* Dkt. 41). Defendants do not presently seek summary judgment as to any of their counterclaims. (Dkt. 65-2 at ¶ 12 ("Defendants' Motion does not concern their own claims.")).

## BACKGROUND

### I.   Factual Background

The following facts are derived from Defendants' Statement of Uncontested Facts submitted in support of their motion for summary judgment (Dkt. 66), Plaintiff's Response to Defendants' Statement of Uncontested Facts (Dkt. 75-2 at 1-14), Plaintiff's Counterstatement of Uncontested Facts submitted in opposition to Defendants' motion (Dkt. 75-2 at 15-21), Defendants' Response to Plaintiff's Statement of Additional Material Facts (Dkt. 81), and the exhibits submitted by the parties.  Unless otherwise noted, these facts are uncontested.

Plaintiff was born in India, is of Indian ethnicity, and has Indian citizenship.  (Dkt. 81 at ¶ 1).  Plaintiff worked in the United States from 2007 until 2018 on L-1A and H-1B visas.  (*Id*. at ¶ 2). Penakalapati was Plaintiff's supervisor at Mascon Global Limited ("MGL"), where Plaintiff began working in 2008.  (*Id*. at ¶ 3).  Penakalapati interviewed and hired Plaintiff to work at MGL.  (Dkt. 66 at ¶ 4; Dkt. 75-2 at 1).

Penakalapati was born in the same Southern Indian State as Plaintiff.  (Dkt. 66 at ¶ 2; Dkt. 75-2 at 1).  Plaintiff and Penakalapati had a "good relationship that extended outside of work," which included visiting each other's homes and socializing with each other's families once per week.  (Dkt. 66 at ¶ 6; Dkt. 75-2 at 1).  They further spoke to each other in Telugu, "a language primarily spoken in states in Southern India."  (Dkt. 66 at ¶ 8; Dkt. 75-2 at 1).

By 2010, MGL was experiencing financial difficulties, which included failing to pay employees monies owed.  (Dkt. 66 at ¶ 11; Dkt. 75-2 at 2).  Plaintiff and Penakalapati

were concerned about the continuing viability of MGL and had discussions regarding other business opportunities.  (Dkt. 66 at ¶¶ 12-13; Dkt. 75-2 at 2).

Penakalapati had formed Avani as a Michigan corporation in 2008.  (Dkt. 66 at ¶ 15; Dkt. 75-2 at 2).  Plaintiff claims that he and Penakalapati jointly agreed to develop Avani as an information technology business and that because "Penakalapati could not afford to pay a salary to [Plaintiff] and officially bring him to Avani as an employee, . . . Penakalapati promised [Plaintiff] a 20% interest in Avani if [Plaintiff] agreed to work to build the new company in his free time."  (Dkt. 75-2 at 2).  Plaintiff further claims to have been promised that he would "receive 20% 'sweat equity' in any future ventures related to or stemming from Avani."  (*Id*.).  Defendants acknowledge that Penakalapati and Plaintiff "had discussed Plaintiff working for sweat equity in lieu of salary," but maintain that "before Plaintiff left MGL to join Avani, [Penakalapati] determined that Plaintiff had to be paid the prevailing wage and could not work for sweat equity or be an owner of the company." (Dkt. 66 at ¶ 17).

In January 2010, Penakalapati gave Plaintiff a stock certificate (the "Stock Certificate") for 20 shares in Avani.  (Dkt. 66 at ¶ 6; Dkt. 75-2 at 1).  The Stock Certificate was dated January 16, 2010, and indicated that Avani was authorized to issue 200 common shares.  (Dkt. 66-4 at 2).  The parties dispute whether it is accurate that there were 200 shares of Avani at that time—Plaintiff maintains that there were only 100 such shares, that the stock register from which the Stock Certificate originated inaccurately indicated that there were 200 such shares, and that Plaintiff's 20 shares thus represented a 20% interest in Avani. (Dkt. 75-2 at 2-3).  Defendants acknowledge that Avani had only 100 outstanding

shares "at one time" but deny that there were only 100 shares at the time the Stock Certificate was issued. (Dkt. 81 at ¶ 11). Defendants further contend that Penakalapati gave the Stock Certificate to Plaintiff before he learned that, consistent with the terms of his H1-B visa, "Plaintiff had to be paid the prevailing wage and could not work for sweat equity." (Dkt. 81 at ¶ 9; *see also id.* at ¶ 11 ("Defendants do not contest that Plaintiff received a certificate for 20 shares of Avani, but contest[] whether Plaintiff held ownership interest and contest[] whether Plaintiff was owner of Avani, because it was understood that the failure to pay the prevailing wage or granting of ownership could result in the denial of his H1-B application.")).

Plaintiff claims that he worked for Avani without pay from January 2010 until April 2011, while also continuing to work for MGL. (Dkt. 75-2 at 17). Defendants deny that Plaintiff worked for Avani prior to April 2011. (Dkt. 81 at ¶¶ 12-13).

The parties agree that in October 2010, Penakalapati provided Plaintiff with an employment agreement indicating that Plaintiff would work for Avani for an annual wage of $50,203. (Dkt. 75-2 at 18; Dkt. 81 at ¶ 14). Defendants contend that this salary represented the prevailing wage for the position Plaintiff was expected to take at Avani and that the purpose of the employment agreement was to effectuate the transfer of Plaintiff's authority to work pursuant to his H1-B visa from MGL to Avani. (Dkt. 81 at ¶ 14). Defendants further maintain that "Plaintiff was expected to start with Avani only after it could offer a salary more competitive with his salary at MGL." (*Id.*).

In April 2011, Plaintiff resigned from MGL and executed a new employment agreement (the "April 2011 Employment Agreement") with Avani. (*Id.* at ¶ 16). The April

2011 Employment Agreement provides for an annual wage of $84,000. (Dkt. 66-7 at 2).

It further provides as follows:

> ENTIRE AGREEMENT: This Agreement and any Addendum attached represent the entire agreement of the parties and supersede all prior statements, discussions, and understandings and may [be] amended only by the writing [sic] signed by both parties. The terms of this Agreement and its Addendum's [sic] shall be applied as written and, if necessary, shall be deemed modified as necessary so as to render them valid and enforceable to the fullest extent permissible by applicable law.

(*Id*. at 3-4).

Plaintiff claims that "[o]ver the ensuing years, as Avani grew . . ., Penakalapati repeatedly restated his promise to [Plaintiff] that he was entitled to a 20% interest" in businesses acquired by Penakalapati, including Ceipal, ABP, and Indotronix. (Dkt. 75-2 at 3). Plaintiff further claims that "Penakalapati repeatedly promised to formalize [Plaintiff's] 20% sweat equity interest in these companies by creating a holding company to hold all of the corporate defendants, and giving [Plaintiff] 20% of the shares of the holding company." (*Id*.). Defendants deny that Penakalapati made any such promises. (Dkt. 81 at ¶ 22-24).

According to Plaintiff, his final conversation with Penakalapati "concerning his 20% stake in the defendant companies" took place "near the end of 2016." (Dkt. 75-2 at 19). Defendants acknowledge that Plaintiff "requested equity in or around October and November of 2016." (Dkt. 81 at ¶ 27). However, Defendants assert that on November 21, 2016, Penakalapati "informed Plaintiff that Avani would not provide him with equity but Avani would increase his annual salary to $135,000 and provide a $7,500 bonus for every

10 million dollars of revenue."  (Dkt. 66 at ¶ 53).  In an email sent that day, Penakalapati wrote that:

> Regards to the sweat stake in the company, that will be given as stocks among other qualified employees, all based in contributions and other growth activities we do as a group company.  As we continue to evolve as a bigger organization, the parties who becomes part of the sweat stake increases and will be calculated based on the remaining stake and debt of the company at the time.

(Dkt. 66-5 at 3).  On November 26, 2016, Avani provided Plaintiff a $13,000 bonus.  (Dkt. 66 at ¶ 57; Dkt. 75-2 at 8).

Plaintiff began looking for a new job in November or December of 2016.  (Dkt. 66 at ¶ 58; Dkt. 75-2 at 8).  Plaintiff claims that "the greatest reason" he began looking for other employment was because Penakalapati "had threatened to revoke his H1-B visa and [Plaintiff] might then be deported from the United States."  (Dkt. 75-2 at 8).  The details of this alleged threat are discussed further below.  Plaintiff further states that he "began to look for another job because he knew that . . . Penakalapati's promise to award 20% sweat equity would never come to fruition[.]"  (*Id*.).

On December 2, 2016, Penakalapati presented a letter (the "December 2016 Letter") to Plaintiff that thanked Plaintiff for his contributions to Avani, stated that Penakalapati was "hopeful that [Plaintiff] would continue to be one of the key people for Avani," and stated a desire to pay Plaintiff "a bonus of cash and/or stock" when Avani reached revenue of $100 million per year.  (Dkt. 66-15 at 2; Dkt. 81 at ¶ 28).  Plaintiff acknowledges having received and signed the December 2016 Letter. (Dkt. 75-2 at 19-20).

Plaintiff claims that later in the day on December 2, 2016, Penakalapati approached him and demanded that he return the Stock Certificate, asserting that Plaintiff must do so because he had signed the December 2016 Letter.  (*Id*. at 20).  Plaintiff further claims that he initially refused to return the Stock Certificate, but that Penakalapati told him that if he did not comply, Penakalapati would revoke Plaintiff's H1-B visa.  (*Id*.).  Plaintiff then claims to have retrieved the Stock Certificate from his home, made a copy, and returned the original to Penakalapati.  (*Id*.).  Defendants admit that Penakalapati asked Plaintiff to return the Stock Certificate on December 2, 2016, but deny Plaintiff's claim that he refused to do so and that Penakalapati threatened Plaintiff with revocation of his visa.  (Dkt. 81 at ¶¶ 31-34).

Plaintiff successfully interviewed for a position with Tachyon Technologies ("Tachyon") in January 2017.  (Dkt. 81 at ¶ 36).  In March 2017, having signed an agreement with Tachyon and transferred his visa, Plaintiff advised Penakalapati of his intention to resign from Avani.  (Dkt. 66 at ¶ 79; Dkt. 75-2 at 90).  Defendants have stated and submitted evidence that Penakalapati attempted to persuade Plaintiff to remain with Avani, including by offering to contribute $5,000 per month for each of Plaintiff's children's educations.  (*See* Dkt. 66 at ¶¶ 80-83).  Plaintiff does not substantively dispute that Penakalapati took these actions, but merely asserts his opinion that these facts are "not material to this motion."  (Dkt. 75-2 at 10)[2].

---

[2]      Indeed, in response to 12 of the numbered paragraphs set forth in Defendants' Statement of Uncontested Facts, Plaintiff has simply asserted that the facts set forth by Defendants are not material to the instant motion.  (*See* Dkt. 75-2).  This District's Local Rules of Civil Procedure make clear that unless a numbered paragraph in a moving party's

Plaintiff resigned from Avani effective April 14, 2017, and began working for Tachyon on or about April 17, 2017, for an annual salary of $100,000. (Dkt. 66 at ¶ 83).

On December 27, 2017, Plaintiff filed a charge of discrimination against Avani. (Dkt. 66 at ¶ 84; Dkt. 75-2 at 10). ABP, Ceipal, and Indotronix are not named in Plaintiff's charge of discrimination. (Dkt. 66 at ¶ 85; Dkt. 75-2 at 100).

## II.     **Procedural Background**

Plaintiff commenced the instant action on July 30, 2018. (Dkt. 1). Discovery closed on October 30, 2020. (Dkt. 78).

Defendants filed the instant motion on June 11, 2020. (Dkt. 65; Dkt. 66). Plaintiff filed his response on August 20, 2020 (Dkt. 75), and Defendants filed their reply on September 17, 2020 (Dkt. 80; Dkt. 81).

## **DISCUSSION**

## I.     **Legal Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could

---

statement is "specifically controverted by a correspondingly numbered paragraph in the opposing statement," it may be deemed admitted for purposes of the motion. L. R. Civ. P. 56(a)(2) (emphasis added). Materiality is for the Court to decide, and in the absence of any controverting submission by Plaintiff, the Court will treat the facts set forth by Defendants in paragraphs 14, 23, 75, 76, 77, 78, 80, 81, 82, 83, 111, and 113 of their Statement of Uncontested Facts as admitted for purposes of the instant motion.

find in favor of that party.  *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ."  *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014).  "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial."  *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."  *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).  Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown*, 654 F.3d at 358.  Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.   **Defendants' Motion for Summary Judgment**

Plaintiff asserts the following claims in his complaint: (1) a claim for a declaratory judgment related to his purported ownership interest in Avani and the other corporate

defendants; (2) a claim for fraud based on Penakalapati's purported promise in November or December 2016 to provide Plaintiff with a 20% ownership interest in Avani "and its related companies" in order to induce Plaintiff "to continue working for Avani . . . and to surrender his Stock Certificate. . . ."  (Dkt. 1 at ¶¶ 37-38); (3) a breach of contract claim related to Penakalapati's purported agreement to "exchange Plaintiff's Stock Certificate . . . and Plaintiff's continued employment with Avani . . . for a 20% share of Avani . . . and its related holding companies" (*id*. at ¶ 43); (4) claims of disparate treatment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et. seq*. ("Title VII"); (5) a claim of retaliation in violation of Title VII; (6) a claim of discrimination and retaliation in violation of the New York State Human Rights Law, New York Executive Law §§ 291-296 (the "NYSHRL"); and (7) a claim for discrimination and retaliation in violation of 42 U.S.C. § 1981. (Dkt. 1).  The Court considers the viability of each of these claims below.

### A.    <u>Declaratory Judgment Claim</u>

"The Declaratory Judgment Act is properly invoked where 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 151 F. Supp. 3d 451, 454 (S.D.N.Y. 2015) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).  Here, before proceeding to the merits of Plaintiff's request for a declaratory judgment, the Court notes that there is some uncertainty as to what particular declaration Plaintiff seeks.  As Defendants correctly note in their moving papers, the heading for Plaintiff's "First Claim for Relief" indicates that Plaintiff

seeks "Declaratory Judgment that Plaintiff is the Rightful Owner of 20% of Avani Technology and its Related Companies." (Dkt. 1 at 6). However, the body of the "First Claim for Relief" indicates that Plaintiff seeks "a declaration that he is, in fact, the rightful owner of 20 shares of Avani Technology Solutions Inc." (*Id*. at 7). Then, in his prayer for relief, Plaintiff "demands . . . [a] declaratory judgment that Plaintiff is the owner of 20 shares of Avani Technology stock <u>and</u> 20% of Avani Technology and its related companies." (*Id*. at 13 (emphasis added)). Plaintiff's opposition to Defendants' motion for summary judgment provides no clarification as to the contours of the declaration he seeks. Accordingly, the Court considers the viability of both requests identified in Plaintiff's prayer for relief.

To the extent that Plaintiff seeks a declaratory judgment that he is the owner of 20% of Avani and the other corporate defendants, the Court agrees with Defendants that summary judgment is appropriate. While there is a genuine dispute between the parties as to whether Penakalapati agreed to give Plaintiff a 20% ownership interest in return for Plaintiff working for Avani without pay, the record is clear that the only step taken to actually consummate any such agreement was the delivery of the Stock Certificate. Indeed, Plaintiff's own Counterstatement of Uncontested Facts acknowledges that his purported "20% sweat equity interest" was never formalized and that while at one point he "believed . . . that he would soon receive a 20% interest in all of the defendant companies as a reward for [his] sacrifice," he eventually realized that "Penakalapati's promise to award 20% sweat equity would never come to fruition[.]" (Dkt. 75-2 at 8, 19). In other words, even accepting

as true Plaintiff's version of events, Penakalapati promised 20% ownership of Avani and the other corporate defendants, but never took the steps necessary to fulfill that promise.

"A declaratory judgment does not compel parties to act; rather, it declares the rights and other legal relations of any interested party seeking such a declaration in cases of actual controversy." *Scheiner v. ACT Inc.*, No. 10-CV-0096 RRM RER, 2013 WL 685445, at *2 n.2 (E.D.N.Y. Feb. 24, 2013) (quotations and alteration omitted). In other words, a request for a declaratory judgment is not a vehicle to force compliance with contractual obligations, and cannot be used to alter the legal relationship between two parties, rather than to state the details of the legal relationship. Plaintiff cannot obtain a declaration that he is the owner of 20% of Avani or any of the other corporate defendants because he indisputably is not, regardless of whether, as he claims, he should have been made such.[3]

However, the Court finds that genuine issues of material fact exist as to Plaintiff's claim that he is an owner of 20 shares of Avani. It is undisputed that Penakalapati delivered the Stock Certificate to Plaintiff in January of 2010 and that the Stock Certificate on its face indicates that Plaintiff owns 20 shares of Avani. On the record before the Court, a

---

[3]      The Court does not read Plaintiff's complaint as seeking a declaration regarding the enforceability of Penakalapati's purported promises to give Plaintiff a 20% ownership interest in Avani and any related companies. Further, such a claim would not be viable in any event. Courts routinely "reject declaratory judgment claims when other claims in the suit will resolve the same issues, because, under such circumstances, a declaratory judgment will not serve any useful purpose." *Optanix, Inc. v. Alorica, Inc.*, No. 1:20-CV-09660-GHW, 2021 WL 2810060, at *3 (S.D.N.Y. July 6, 2021) (quotation omitted). Here, a declaratory judgment solely regarding the enforceability of Penakalapati's claimed agreement to provide Plaintiff with a 20% ownership interest in the corporate defendants would be duplicative of Plaintiff's breach of contract claim and thus cannot be maintained in tandem therewith. *See id.* at *4 (collecting cases finding declaratory judgment claim duplicative of breach of contract claim).

rational jury could conclude that Plaintiff obtained 20 shares of Avani in January 2010 in exchange for his agreement to work with pay to get the new business venture up and running.

There are further genuine issues of material fact surrounding the circumstances under which the Stock Certificate was returned to Penakalapati. Defendants contend that Plaintiff "voluntarily relinquished the [Stock] Certificate for [c]onsideration" (Dkt. 65-1 at 15)—specifically, the increased salary and bonuses he was awarded in late November 2016. However, acceptance of this argument would require the Court to discount Plaintiff's testimony that Penakalapati did not ask him to return the Stock Certificate until December 2, 2016, and that Penakalapati claimed Plaintiff was obligated to do so because he had signed the December 2016 Letter (and not because he had accepted a salary increase in late November 2016). This is precisely the sort of factfinding that the Court cannot engage in when deciding a motion for summary judgment.

Further, if, as Plaintiff contends, he received no consideration for the return of his Stock Certificate[4], then his agreement to do so was unenforceable. *See L.B. Kaye Assocs., Ltd. v. Jews for Jesus*, 677 F. Supp. 160, 165 (S.D.N.Y. 1988) (explaining that under New York law, a modification to a contractual agreement is unenforceable unless supported by consideration), *aff'd*, 854 F.2d 1314 (2d Cir. 1988). While Defendants contend that "in

---

[4]    The parties are in agreement that the December 2016 Letter created no legal obligations as to any party and did not reference the Stock Certificate. (*See* Dkt. 81 at ¶ 28). Accordingly, nothing set forth therein can constitute consideration for the return of the Stock Certificate.

response to Plaintiff's October 2016 request for equity, Avani increased his salary to $135,000 and paid a $13,000 bonus on November 26, 2016" (Dkt. 80 at 9), they have failed to produce or point to any undisputed evidence establishing that Plaintiff agreed to relinquish the shares he claims to have already owned in exchange for his increased pay.[5]

Finally, the record before the Court reveals a genuine issue of material fact regarding Avani's treatment of the shares represented by Plaintiff's Stock Certificate. It is undisputed that, at least as of October 23, 2019, no transfer of Plaintiff's claimed shares had been recorded in Avani's stock register. (Dkt. 81 at ¶ 34). While Defendants claim that this is because "the [Stock] Certificate was never treated as making Plaintiff an owner because he had not worked for Avani two years without wages" (*id.*), Plaintiff contests that this is the case. Again, the Court cannot resolve this conflict on a motion for summary judgment.

For all these reasons, the Court denies Defendants' request for summary judgment as to Plaintiff's declaratory judgment claim solely to the extent that Plaintiff seeks a declaration that he is the owner of 20 shares of Avani. Defendants' motion is granted as to all other aspects of Plaintiff's declaratory judgment claim.

### B.  Fraud Claim

The Court turns next to the viability of Plaintiff's claim of fraud. Plaintiff's particular claim is that he continued to work for Avani and surrendered the Stock Certificate in December 2016 because "Penakalapati, on behalf of all Defendants, promised

---

[5]     Having found a genuine dispute as to the existence of consideration, the Court need not and does not reach Defendants' arguments regarding the adequacy of Plaintiff's alternative claim of duress.

plaintiff 20% of Avani Technology and its related companies as 'sweat equity' for Plaintiff's past and future work for Avani Technology" despite knowing that such promise was false. (Dkt. 1 at ¶¶ 37-39). The Court agrees with Defendants that no rational jury could find in Plaintiff's favor on this claim.

Under New York law, a claim for fraudulent misrepresentation requires a plaintiff to demonstrate "that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 186-87 (2d Cir. 2004). Plaintiff cannot, on the record before the Court, establish that he reasonably relied upon Penakalapati's claimed promise.   To the contrary, Plaintiff's own version of events establishes that he did not do so.

Plaintiff maintains that he "knew that . . . Penakalapati had no intention of honoring his promise to create [a] holding company and give [Plaintiff] a 20% interest in that company." (Dkt. 75-2 at 21). Indeed, Plaintiff states that he began looking for other employment in late 2016 precisely because he had no trust in Penakalapati's purported promise. (*Id*.). Further, as discussed above, Plaintiff's position is that he returned the Stock Certificate to Penakalapati not because he believed Penakalapati's alleged representations, but because Penakalapati threatened to revoke his visa and render him susceptible to deportation. (*Id*. at 20-21). On these facts, Plaintiff cannot maintain his claim of fraud. *See, e.g., Rodriguez v. It's Just Lunch, Int'l*, No. 07 CIV. 9227 SHS, 2013 WL 1749590, at *4 (S.D.N.Y. Apr. 23, 2013) ("Because Rodriguez's sworn testimony demonstrates that

she did not rely on any misrepresentation of defendants, her fraudulent inducement claim must be dismissed."); *Dyke v. Peck*, 279 A.D.2d 841, 843 (3d Dep't 2001) (affirming grant of summary judgment on fraud claim because it was "clear from the record" that the plaintiff did not rely on the defendant's purported false representation). Defendants' request for summary judgment is granted as to Plaintiff's claim of fraud.

### C.   Breach of Contract Claim

The Court turns next to Plaintiff's claim for breach of contract. This claim is based on Plaintiff's allegation that "in December 2016, . . . Penakalapati, on behalf of all Defendants, agreed to exchange Plaintiff's Stock Certificate #2 and Plaintiff's continued employment with Avani Technology for a 20% share of Avani Technology and its related holding companies." (Dkt. 1 at ¶ 43). The Court agrees with Defendant that Plaintiff cannot maintain this claim.

Plaintiff's April 2011 Employment Agreement expressly provides that it may be modified only in writing. (*See* Dkt. 66-7). New York General Obligations Law § 15-301(1) provides that:

> A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.

This "statute indicates that where a contract contains a 'no oral modification' clause, that clause will be enforceable." *Israel v. Chabra*, 12 N.Y.3d 158, 163 (2009). "The party seeking to avoid the effect of this provision . . . can only do so by showing either partial performance or equitable estoppel." *Baraliu v. Vinya Cap., L.P.*, 765 F. Supp. 2d 289, 297

(S.D.N.Y. 2011).  Further, partial performance will vitiate the need for a writing only where it is "'unequivocally referable' to the new contract." *Merrill Lynch Interfunding v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998) (quoting *Rose v. Spa Realty Associates*, 42 N.Y.2d 338, 343-44 (1977)).  "[T]he key aspect of New York law is that, for either partial performance or equitable estoppel to apply and show an effective oral modification to the written contract, the conduct relied upon by the plaintiff to prove the modification must be not otherwise compatible with the agreement as written." *Baraliu*, 765 F. Supp. 2d at 298 (quotation omitted).

Here, it is undisputed that Penakalapati's alleged December 2016 promise to exchange equity for Plaintiff's continued employment was not made in writing.  Further, Plaintiff cannot demonstrate either partial performance or equitable estoppel because he cannot show conduct that is otherwise incompatible with the April 2011 Employment Agreement.  Plaintiff's continued employment was expressly anticipated by the April 2011 Employment Agreement.  Further, Plaintiff's own factual contentions—namely, that his relinquishment of the Stock Certificate was done not as part of any agreement but because Penakalapati threatened him with deportation—preclude any finding that this action was "explainable only with reference to the oral agreement." *Randolph Equities, LLC v. Carbon Capital, Inc*., 648 F. Supp. 2d 507, 518 (S.D.N.Y. 2009) (quotation omitted).

Plaintiff argues that the claimed December 2016 oral agreement is nevertheless enforceable, because New York Uniform Commercial Code ("N.Y. U.C.C.") § 8-113(a) provides that "a contract or modification of a contract for the sale or purchase of a security is enforceable whether or not there is a writing signed or record authenticated by a party

against whom enforcement is sought, even if the contract or modification is not capable of performance within one year of its making." However, with certain exceptions not relevant here, "the effect of provisions of [the N.Y. U.C.C.] may be varied by agreement." N.Y. U.C.C. Law § 1-302. In this case, the parties expressly agreed in the April 2011 Employment Agreement that its terms could not be changed except in writing. That agreement governs, not the default rule set forth in N.Y. U.C.C. § 8-113(a).

In sum, the April 2011 Employment Agreement, which all parties agree constituted a valid and binding contract, required that any modification to its terms be made in writing. The claimed December 2016 agreement to provide Plaintiff with a 20% ownership interest in a to-be-formed holding company in exchange for his continued employment plainly would have constituted such a modification. The lack of any writing memorializing the alleged December 2016 modification is thus fatal to Plaintiff's breach of contract claim. *See Baraliu*, 765 F. Supp. 2d at 297-98 (granting summary judgment in favor of the defendants on the plaintiff's claim that his employment agreement had been orally modified so as to guarantee him a $500,000 bonus and a 2.5% ownership stake, because the employment agreement contained a no-oral-modification clause and "[w]hile [the plaintiff] . . . claims that he continued to work at [the defendant company] in reliance upon [the defendant owner's] oral promises of additional bonus payments or ownership grants, he has provided no evidence of conduct or performance that cannot be traced to the Original Agreement, which bound him to work for [the defendant company]").

D.    **Title VII Claims**

Plaintiff asserts discrimination and retaliation claims under Title VII.  These claims must fail, for the reasons discussed below.

As a threshold matter, a Title VII claim can be maintained only against an employer. *See Kern v. City of Rochester*, 93 F.3d 38, 45 (2d Cir. 1996) ("Title VII is an employment law, available only to employees (or prospective employees) seeking redress for the unlawful employment practices of their employers.") (citation omitted)).  Here, it is undisputed that ABP, Ceipal, and Indotronix never employed Plaintiff.  Accordingly, Plaintiff cannot maintain a Title VII claim against them.  Further, there is no individual liability under Title VII.  *See Tawfik v. Georgatos*, No. 20-CV-5832(JS)(AKT), 2021 WL 2953227, at *4 (E.D.N.Y. July 14, 2021).  Thus, the only potentially viable defendant as to Plaintiff's Title VII claims is Avani.

Further, as Defendants correctly argue in their motion for summary judgment, Plaintiff's Title VII claims are time-barred.  "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."  *Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (citation omitted).  Title VII requires that a charge of discrimination be filed within 300 days of the unlawful conduct. 42 U.S.C. § 2000e-5(e)(1).  This statutory requirement functions as a statute of limitations.  *See Ohuche v. New York City Bd. of Educ.*, 161 F. App'x 68, 69 (2d Cir. 2005).

In this case, Plaintiff filed his charge of discrimination on December 27, 2017.  (Dkt. 66-19 at 2-3).  March 2, 2017, was 300 days prior to this date.  However, Plaintiff admits

that after December 2, 2016, the terms and conditions of his employment did not change,

he was not harassed, and no adverse employment action was taken against him.  (Dkt. 66

at 10; Dkt. 75-2 at 9).  In other words, none of the allegedly unlawful conduct occurred

within 300 days of the filing of Plaintiff's charge of discrimination.

As discussed further below, in opposition to Defendants' motion for summary

judgment, Plaintiff has identified only the discrete instance in which Penakalapati allegedly

threatened to revoke his H1-B visa as the basis for his various discrimination claims.  (*See*

Dkt. 75 at 16-17).  That alleged threat occurred well outside the 300-day window.  Further,

even to the extent that Plaintiff was trying to assert a continuing violation of his rights,

"[t]o bring a claim within the continuing violation exception, a plaintiff must at the very

least allege that one act of discrimination in furtherance of the ongoing policy occurred

within the limitations period."  *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d

Cir. 2004).  Again, in this case, Plaintiff has conceded that none of the alleged acts of

discrimination occurred within the 300 days preceding the filing of his charge.

Accordingly, Plaintiff's Title VII claims are untimely and Defendants are entitled to

summary judgment thereon.

### E.    NYSHRL and § 1981 Discrimination Claims

Defendants are also entitled to summary judgment on Plaintiff's claims of

discrimination under the NYSHRL and § 1981.  Although there are differences between

these two anti-discrimination statutes, they both require adverse action because of a

protected characteristic.  *See Littlejohn v. City of New York*, 795 F.3d 297, 314 (2d Cir.

2015) (§ 1981); *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 248 (E.D.N.Y. 2015) (NYSHRL).

Here, although Plaintiff identified various forms of alleged discrimination during the discovery phase of this litigation, the sole argument he makes in opposition to Defendants' motion for summary judgment is that he was discriminated against on the basis of his national origin when Penakalapati threatened to revoke his H1-B visa unless he surrendered the Stock Certificate. (*See* Dkt. 75 at 16-17). "A court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." *Banyan v. Sikorski*, No. 17-CV-4942 (LJL), 2021 WL 2156226, at *2 (S.D.N.Y. May 27, 2021) (citation omitted and finding summary judgment appropriately granted based on the plaintiff's "failure to respond to arguments set forth in a moving party's brief"). Here, because Plaintiff has failed to respond to Defendants' contention that they are entitled to summary judgment with respect to the other allegedly discriminatory conduct previously identified by Plaintiff, the Court finds that he has abandoned any discrimination claim based on such conduct.

Further, no rational jury could find, on the record before the Court, that Penakalapati's threat to revoke Plaintiff's H1-B visa was motivated by Plaintiff's national origin (or any other protected characteristic). Plaintiff himself testified at his deposition that the claimed threat was not motivated by Plaintiff's national origin, but was instead aimed at getting back the Stock Certificate. (Dkt. 66-2 at 105-106). Plaintiff's contention that Penakalapati could not have successfully made his threat if Plaintiff were a citizen of the United States misses the mark. "**[D]iscriminatory intent** is a necessary element of a

§ 1981 claim." *Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 368 (S.D.N.Y. 2006) (emphasis added).  The same is true of a claim under the NYSHRL.  *See Smith v. City of New York*, 385 F. Supp. 3d 323, 332 (S.D.N.Y. 2019).  Here, Plaintiff has conceded that Penakalapati's motivation was economic and not discriminatory.  No rational jury could find for him on his claims of unlawful discrimination.

### F.    Retaliation Claims

Finally, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claims of retaliation under the NYSHRL and § 1981.  "To establish a prima facie case of retaliation under Title VII, Section 1981, and the NYSHRL, an employee must show that: (1) he engaged in protected participation or opposition, (2) that the employer was aware of this activity, (3) that the employer took adverse action against the plaintiff, and (4) that a causal connection exists between the protected activity and the adverse action."  *Gerald v. DCV Holdings, Inc.*, No. 17-CV-6525(EK)(RLM), 2021 WL 2809915, at *11 (E.D.N.Y. July 6, 2021) (quotation and alteration omitted).  Here, the only protected activity identified by Plaintiff is a complaint made after December 2, 2016.  (*See* Dkt. 66-2 at 135).  However, as noted above, Plaintiff also concedes that he did not suffer any adverse action after December 2, 2016.  (Dkt. 66 at 10; Dkt. 75-2 at 9).  To the contrary, the evidence before the Court demonstrates that Plaintiff was offered substantial incentives to continue working for Avani.  "[T]o constitute retaliation, the alleged protected activity must predate evidence of the alleged retaliatory animus."  *Furk v. Orange-Ulster BOCES*, No. 15-CV-6594 (NSR), 2016 WL 6560408, at *4 (S.D.N.Y. Nov. 2, 2016) (citation and

original alteration omitted).   Plaintiff cannot maintain a retaliation claim where he concededly suffered no adverse consequences after making his complaint.

## **CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is denied solely as to Plaintiff's claim for a declaratory judgment that he is the owner of 20 shares of Avani Technology Solutions, Inc., and is granted in all other respects.   The Clerk of Court is instructed to terminate Ceipal Corp., Avani Business Park, LLC, and Indotronix International Corp. as defendants in this action.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      July 23, 2021
            Rochester, New York